Affirmed and Opinion filed May 12, 2009








Affirmed
and Opinion filed May 12, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00369-CR

____________

 

DEXTER ARTHUR JACKSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 1489802

 



 

O P I N I O N

Appellant
Dexter Arthur Jackson challenges his conviction for interference with an
emergency telephone call.  After the jury found appellant guilty, the trial
court assessed punishment as confinement for 300 days.  Appellant contends that
(1) the evidence is legally and factually insufficient to support the jury=s finding that the telephone call was
an emergency call; and (2) the trial court erred in denying his motions for
mistrial following the complainant=s references to appellant=s previous incarceration.  We affirm.








Background

Appellant
and the complainant began dating in October 2004.  Shortly thereafter,
appellant moved in with the complainant and her two children.  This living
arrangement continued after the romantic relationship between appellant and the
complainant ended in 2006.  The complainant ceased working after August 27,
2007.  Appellant provided income to meet the financial needs of the complainant
and her children after she stopped working.

Appellant
and the complainant got into an argument on November 4, 2007, when appellant
told the complainant that he no longer wanted to provide income for her and her
children.  The complainant ordered appellant to move out of the apartment they
shared.  Appellant gathered boxes and began packing up his belongings while
continuing to argue with the complainant.  The complainant said she would call
the police if appellant did not leave.  After the complainant dialed 9-1-1,
appellant knocked the telephone out of her hand.  Police officers responded to
this Ahang up@ call.  Before the officers arrived,
the complainant called 9-1-1 again.

Appellant
was charged by information with assault on a household member and interference
with an emergency telephone call based on his actions in connection with the
first call.  He was not charged in connection with the second call.

At
trial, Houston Police Officer Cedric Harper testified that the complainant told
him at the scene that appellant Aassaulted her during the verbal
argument, and she tried to dial 911 and he slapped the phone away from her
hand.@  Officer Harper also testified that
the complainant was crying when he arrived at the scene, and that she left her
apartment Ato get away from [appellant]@ after placing her first 9-1-1 call.








The
complainant testified that when she first called 9-1-1, appellant said, A[B]itch, you going to call the cops,
I=m going to give you something to call
the cops for.@  The complainant further testified that appellant jumped on top of her
and knocked the telephone from her hand after yelling at her when she first
called 9-1-1.  The complainant stated that she called 9-1-1 to have appellant
removed from her apartment, and because AI thought [appellant] was going to
hurt me.@  The complainant testified that
appellant had assaulted her approximately one year before this argument, and
that on November 4, 2007, appellant demonstrated Aa rage in him that night that I never
seen before.@

The jury
found appellant not guilty of assault and guilty of interference with an
emergency telephone call.  The trial court sentenced appellant to confinement
for 300 days in a judgment signed on April 2, 2008.  Appellant appeals from
this judgment.

Analysis

An individual
commits an offense if the individual knowingly prevents or interferes with
another individual=s ability to place an emergency telephone call or to request
assistance in an emergency from a law enforcement agency.  Tex. Penal Code Ann.
_ 42.062(a) (Vernon Supp. 2008).  The
statutory definition of Aemergency@ includes a condition or circumstance in which any individual
is or is reasonably believed by the individual making a telephone call to be in
fear of imminent assault.  Id. _ 42.062(d).

An
individual commits an assault if he Aintentionally, knowingly, or
recklessly causes bodily injury to another . . . [or] intentionally or
knowingly threatens another with imminent bodily injury.@  Id. _ 22.01(a)(1), (2) (Vernon Supp.
2008).

Appellant
challenges the legal and factual sufficiency of the evidence supporting the
finding that the complainant=s first call to 9-1-1 was an emergency call.  Additionally,
appellant challenges the trial court=s denial of his motions for
mistrial.  We address each challenge in turn.

I.          Legal Sufficiency








In
reviewing legal sufficiency of the evidence, an appellate court will examine
the evidence in the light most favorable to the State to determine whether any
rational finder of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
The court does not sit as a thirteenth juror and may not re-evaluate the weight
and credibility of the record evidence or substitute its judgment for that of
the fact finder.  Dewberry, 4 S.W.3d at 740.

Reconciliation
of conflicts in the evidence is within the exclusive province of the fact
finder.  See Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998)
(en banc).  The appellate court=s duty is not to reweigh the evidence, but to serve as a
final due process safeguard ensuring only the rationality of the fact finder.  See
Williams v. State, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996).  An
appellate court faced with a record of facts that supports conflicting
inferences must presume _ even if not obvious from the record _ that the finder of fact resolved any such conflicts
in favor of the State, and must defer to that resolution.  Jackson, 443
U.S. at 326.

Appellant=s legal sufficiency challenge focuses
on whether the first 9-1-1 call was an Aemergency@ call as defined by statute.  Officer
Harper testified that the complainant told him at the scene that appellant Aassaulted her during the verbal
argument, and she tried to dial 911 and he slapped the phone away from her
hand.@  Officer Harper also testified that
the complainant was crying when he arrived at the scene, and that she left her
apartment Ato get away from [appellant]@ after placing her first 9-1-1 call. 
The complainant testified that when she first called 9-1-1, appellant said, A[B]itch, you going to call the cops,
I=m going to give you something to call
the cops for.@  The complainant further testified that appellant jumped on top of her
and knocked the telephone from her hand after yelling at her when she called
9-1-1.  The complainant stated that she called 9-1-1 in part because AI thought [appellant] was going to
hurt me.@  She also testified that appellant
had assaulted her approximately one year before this argument, and that on
November 4, 2007, appellant demonstrated Aa rage in him that night that I never
seen before.@








Appellant
argues that this evidence is legally insufficient to support the jury=s finding that the complainant=s first 9-1-1 call was an emergency
call because it fails to establish that the complainant was in fear of an
imminent assault before placing the first call.  Appellant attempts to limit
the time frame of the testimony about the complainant=s fear of an imminent assault to the
period after the first 9-1-1 call and before the second one.  Based on this
limitation, appellant argues that the complainant=s first 9-1-1 call was not prompted
by an Aemergency@ because her only motivation was to
obtain police assistance in removing appellant from the apartment as quickly as
possible.

The
record is not entirely clear regarding the timeline of events on November 4,
2007.  That being the case, a rational fact finder could conclude that the
testimony described the complainant=s fear of imminent assault before and
during the first 9-1-1 call.  See Jackson, 443 U.S. at 319; Mosley,
983 S.W.2d at 254.  Viewing the evidence in the light most favorable to the
jury=s verdict, the jury could have found
beyond a reasonable doubt that the 9-1-1 call with which appellant interfered
was an emergency telephone call because the complainant was in fear of imminent
assault before and while making the first call.  See Jackson, 443 U.S.
at 319; Dewberry, 4 S.W.3d at 740.  This conclusion is underscored by In
the Matter of J.A.G., No. 03-05-00004-CV, 2006 WL 1126194 (Tex. App.CAustin Apr. 28, 2006, no pet.) (mem.
op.).

The
complainant in J.A.G. called 9-1-1 after feeling intimidated when her Aout of control@ grandson, who was 5'11" and 175
pounds, refused to get ready for school and locked himself in an upstairs room
after taking his grandmother=s keys Aso that she could not go anywhere.@  Id. at *1.  At a hearing to
adjudicate the grandson=s delinquency, the responding officer testified that the
grandmother was crying and appeared distraught, angry, and upset when he
arrived.  Id.  The officer further testified that the grandmother told
him she called 9-1-1 because she was intimidated by her grandson, and that her
grandson took the phone from her and disconnected the 9-1-1 call once the
grandmother told him she was talking to 9-1-1 personnel.  Id.  The officer
also testified that the grandson had taken the grandmother=s keys from her and that she fled the
house to call 9-1-1 from a neighbor=s home.  Id.








The grandmother,
testifying at the hearing as a hostile witness, denied feeling threatened or
intimidated by her grandson.  Id.  The trial court found the testimony
of 9-1-1 personnel and the responding officer credible while finding the
grandmother=s testimony Acredible in parts and incredible in parts.@  Id.  The trial court then
found that the grandson had engaged in delinquent conduct and placed him on
probation for eight months.  Id.  Applying the same sufficiency
standards used in criminal cases, the Austin Court of Appeals affirmed the
trial court=s judgment and held that the evidence was legally and factually
sufficient to support the trial court=s finding that the 9-1-1 call with
which the grandson interfered was an emergency call.  Id. at *1-*4.








Here, as
in J.A.G., the evidence is legally sufficient to support the jury=s finding that the complainant=s first call to 9-1-1 was an emergency
telephone call based on Officer Harper=s testimony and the complainant=s testimony.  Officer Harper
testified that the complainant (1) told him that appellant Aassaulted her during the verbal
argument, and she tried to dial 911 and he slapped the phone away from her
hand;@ (2) was crying when he arrived at
the scene; and (3) left her apartment Ato get away from [appellant]@ after placing her first 9-1-1 call. 
The complainant testified that (1) appellant said, A[B]itch, you going to call the cops,
I=m going to give you something to call
the cops for@ when she called 9-1-1; (2) appellant jumped on top of her and knocked
the telephone from her hand after yelling at her when she called 9-1-1; (3) she
called 9-1-1 in part because AI thought [appellant] was going to hurt me;@ (4) appellant had assaulted her
approximately one year before this argument; and (5) on November 4, 2007,
appellant demonstrated Aa rage in him that night that I never seen before.@  A rational jury could conclude that
this testimony was credible and established that the complainant was in fear of
an imminent assault at the time she placed her first 9-1-1 call.  See
Jackson, 443 U.S. at 319; Mosley, 983 S.W.2d at 254; cf. Matlock
v. State, No. 12-05-00413-CR, 2006 WL 2106951, at *2 (Tex. App.CTyler July 31, 2006, no pet.) (mem.
op., not designated for publication) (reversing conviction for interference
with an emergency telephone call and acquitting appellant because A[t]he record before us is devoid of
any evidence that [the complainant] was afraid of Appellant@).

We
overrule appellant=s issue regarding legal sufficiency of the evidence supporting
the jury=s finding that the complainant=s first call to 9-1-1 was an
emergency telephone call.

II.        Factual
Sufficiency 

Appellant
next challenges the factual sufficiency of the evidence establishing that the
complainant=s 9-1-1 call with which appellant interfered was an emergency telephone
call.

When
conducting a factual sufficiency review, an appellate court must determine (1)
whether the evidence introduced to support the verdict is Aso weak@ that the fact finder=s verdict seems Aclearly wrong and manifestly unjust,@ and (2) whether, considering
conflicting evidence, the fact finder=s verdict is nevertheless against the
great weight and preponderance of the evidence.  Watson v. State, 204
S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  We view the evidence in a neutral
light in a factual sufficiency review.  Johnson v. State, 23 S.W.3d 1,
11 (Tex. Crim. App. 2000) (en banc).

In order
to declare that an evidentiary conflict justifies a new trial, an appellate
court must rely on some objective basis in the record demonstrating that the
great weight and preponderance of the evidence contradicts the jury=s verdict.  See Lancon v. State,
253 S.W.3d 699, 706-07 (Tex. Crim. App. 2008).  An appellate court should not
intrude upon the fact finder=s role as the sole judge of the weight and credibility of
witness testimony.  Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim.
App. 2002).  

The jury
may choose to believe or disbelieve any portion of the testimony.  Bargas v.
State, 252 S.W.3d 876, 887 (Tex. App.CHouston [14th Dist.] 2008, no pet.)
(citing Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (en
banc)).  Due deference must be given to the fact finder=s determinations concerning the
weight and credibility of the evidence, and reversal of those determinations is
appropriate only to prevent the occurrence of a manifest injustice.  Martinez
v. State, 129 S.W.3d 101, 106 (Tex. Crim. App. 2004).








In
arguing factual sufficiency, appellant focuses on the complainant=s testimony that she first called
9-1-1 in part because she wanted police to assist her in removing appellant
from the apartment.  Appellant highlights a portion of Officer Harper=s police report, which was read to
the jury.  According to the report, the Acomplainant then stated after she
picked up the phone and started dialing 911 . . . the suspect approached her,
grabs the back of her head, started pulling her hair, jerking extensions out of
her hair, and pushed the complainant on top of the couch . . . .@  Appellant contends that this report
establishes he did not assault the complainant until after she
made her first 9-1-1 call.  According to appellant, no direct or circumstantial
evidence suggests that the complainant feared imminent assault when she placed
her first 9-1-1 call.  In addition, appellant asserts that Officer Harper=s testimony likely caused confusion
as to whether he relayed events in the order in which they actually occurred.








We
conclude that the record contains factually sufficient evidence to support the
jury=s finding that the complainant=s first 9-1-1 call was an emergency
telephone call based on the following testimony: (1) Officer Harper testified
that the complainant told him that appellant Aassaulted her during the verbal
argument, and she tried to dial 911 and he slapped the phone away from her
hand;@ (2) Officer Harper testified that the
complainant was crying when he arrived at the scene, and that she left her
apartment Ato get away from [appellant]@ after placing her first 9-1-1 call;
(3) the complainant testified that appellant said, A[B]itch, you going to call the cops,
I=m going to give you something to call
the cops for@ when she called 9-1-1; (4) the complainant testified that appellant
jumped on top of her and knocked the telephone from her hand after yelling at
her when she called 9-1-1; (5) the complainant testified that she called 9-1-1
in part because AI thought [appellant] was going to hurt me;@ and (6) the complainant testified
that appellant had assaulted her approximately one year before this argument,
and that on November 4, 2007 appellant demonstrated Aa rage in him that night that I never
seen before.@  The jury was free to make its own determination regarding the weight
and credibility of this evidence as it pertained to the timeline of events on
November 4, 2007, and whether the complainant feared an imminent assault when
she placed her first 9-1-1 call.  See In the Matter of J.A.G., 2006 WL
1126194, at *1-*4.  

Viewing
the evidence in this case in a neutral light, we conclude that it is factually
sufficient to justify the jury=s finding that the 9-1-1 call with which appellant interfered
was an emergency telephone call.  See Johnson, 23 S.W.3d at 11.  The
jury=s finding is neither clearly wrong
nor manifestly unjust.  See Lancon, 253 S.W.3d at 706-07; Watson,
204 S.W.3d at 414-15; Martinez, 129 S.W.3d at 106.

We
overrule appellant=s issue regarding factual sufficiency of the evidence
supporting the jury=s finding that the complainant=s first call to 9-1-1 was an
emergency telephone call.

III.       Motions for Mistrial

Appellant
challenges the trial court=s denial of two motions for mistrial following the
complainant=s references during her testimony to appellant=s previous incarceration.  We review
the denial of a motion for mistrial for clear abuse of discretion.  Rojas v.
State, 986 S.W.2d 241, 250-51 (Tex. Crim. App. 1998).  A trial court does
not abuse its discretion unless its decision falls outside the zone of
reasonable disagreement.  Santellan v. State, 939 S.W.2d 155, 169 (Tex.
Crim. App. 1997) (en banc).








The Atraditional and preferred procedure
for a party to voice its complaint@ at trial is to undertake the
following steps in sequence: (1) object; (2) request an instruction for the
jury to disregard; and (3) move for a mistrial.  Young v. State, 137
S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc); see also Tex. R. App. P.
33.1(a).  AHowever, this sequence is not essential to preserve complaints for
appellate review.@  Young, 137 S.W.3d at 69.  AThe essential requirement is a
timely, specific request that the trial court refuses.@  Id.  The Atimely, specific request@ may be a request for mistrial in the
first instance.  Id. at 69-70.  A[W]hen a party=s first action is to move for
mistrial . . . the scope of appellate review is limited to the question whether
the trial court erred in not taking the most serious action of ending the trial
. . . .@  Id. at 70.  A[I]n other words, an event that could
have been prevented by timely objection or cured by instruction to the jury
will not lead an appellate court to reverse a judgment on an appeal by the
party who did not request these lesser remedies in the trial court.@  Id.

The
complainant twice referred to appellant=s previous incarceration during her
testimony.  The first instance occurred during direct examination, when the
complainant testified that appellant said, A[B]itch, you trying to send me back
to jail or something?@  Appellant objected and asked to approach the bench.  Once
at the bench, appellant moved for a mistrial without first obtaining a ruling
on his objection or requesting a curative instruction.  The trial court denied
the first motion for mistrial.

The
second instance occurred when the complainant made the following statement
during cross-examination: AI didn=t want to see [appellant] go back to jail . . . .  I never
wanted him to go back to jail >cause I knew he had gotten out of prison on a 13 year
sentence . . . .  I never wanted him to go back to jail.@  Following the complainant=s second reference to appellant=s previous incarceration, appellant
objected and moved for a mistrial without obtaining a ruling on his objection. 
The trial court denied appellant=s second motion for mistrial and
asked appellant if he wanted an instruction to disregard.  Appellant accepted
the trial court=s offer to issue a curative instruction to the jury, and the
jury was so instructed.








Unless
clearly calculated to inflame the minds of the jury or of such damning
character as to make it impossible to remove the harmful impression from the
jurors= minds, a witness=s reference to a defendant=s criminal history, standing alone,
generally is cured by a prompt instruction to disregard.  See Ladd v. State,
3 S.W.3d 547, 571 (Tex. Crim. App. 1999) (instruction to disregard cured
witness=s improper reference to defendant=s multiple juvenile arrests); Kemp
v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (en banc) (witness=s reference to defendant having Arecently been released from the
penitentiary@ cured by instruction to disregard); Nobles v. State, 843 S.W.2d
503, 514 (Tex. Crim. App. 1992) (en banc) (witness=s statement that defendant Adidn=t want to go back to prison@ cured by prompt instruction to
disregard).  AA grant of a motion for mistrial should be reserved for those cases in
which . . . an instruction to disregard could not cure . . . the prejudice
stemming from an event at trial _ i.e., where an instruction would not leave the jury
in an acceptable state to continue the trial.@  Young, 137 S.W.3d at 69.

This is
not such a case.  Nothing in the record here indicates that the complainant=s two references to appellant=s previous incarceration clearly were
calculated to inflame the minds of the jury, or were of such damning character
as to make it impossible to remove the harmful impression from the jurors= minds.  The references mirrored
those typically cured by an instruction to disregard.  See Ladd, 3
S.W.3d at 571; Kemp, 846 S.W.2d at 308; Nobles, 843 S.W.2d at
514.  Because an instruction directing the jury to disregard the complainant=s references to appellant=s previous incarceration would have
adequately addressed appellant=s first objection, the trial court did not err by denying
appellant=s first motion for mistrial.  See Young, 137 S.W.3d at 70. 
Because an appropriate curative instruction was administered in response to
appellant=s second objection, the trial court did not err by denying appellant=s second motion for mistrial.  See
Ladd, 3 S.W.3d at 571; Kemp, 846 S.W.2d at 308; Nobles, 843
S.W.2d at 514.   

We
overrule appellant=s issue regarding the denial of his motions for mistrial.

Conclusion

The
trial court=s judgment is affirmed.

 

 

/s/        William
J. Boyce

Justice

 

Panel consists of
Justices Frost, Brown, and Boyce.

Publish C Tex.
R. App. P. 47.2(b).