# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00509-CR

**Benito Garcia Hinojosa, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-08-904010, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Benito Garcia Hinojosa of voluntary manslaughter, *see* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 19.04, 1973 Tex. Gen. Laws 883, 913, and sentenced him to twenty years in prison. Hinojosa argues that there was error in the jury charge, that he was denied due process when his attorney made a misstatement of the law, and that the evidence was insufficient to support the conviction. We affirm the judgment of conviction.

Appellant Benito Garcia Hinojosa became acquainted with Edward Chavez, Jr., through their employment in construction work. One of the companies for which they worked provided housing for them at an Exel Inn in Austin. Hinojosa and Chavez were roommates. On the night of August 6, 1993, the two men went to a dance. Both men became highly intoxicated and, on the way home, began arguing. They fought violently in the parking lot of the hotel and again in the hotel room. Eventually, Hinojosa became "desperate" and attempted to restrain Chavez with a

telephone cord. Hinojosa then left the premises in Chavez's car. According to Hinojosa, when he left, Chavez was moving and talking. When Hinojosa returned to the Inn, he saw police, assumed he was in trouble, and left for Mexico, where he learned of Chavez's death.

According to the medical examiner, Chavez died of asphyxia resulting from injuries to the face and neck and from the manner in which he had been tied—his body was found face down with the phone cord looped from his mouth to his feet, with his feet suspended in the air behind him. The medical examiner further opined that Chavez had been unconscious when tied up because his hands were not tied, and Chavez could have—and presumably would have—removed the cord from his mouth if he had been conscious.

Two years later, on February 10, 1995, Hinojosa was indicted on one count of murder. Twelve years later, on February 7, 2007, Hinojosa contacted the Austin police department and gave a voluntary statement, which was substantially the same as his testimony at trial. On March 20, 2007, Hinojosa was re-indicted on two counts of murder, one count of voluntary manslaughter, and one count of aggravated robbery. The State eventually abandoned the aggravated robbery charge and dismissed the 1995 indictment. Following trial, a jury found Hinojosa not guilty of the two murder counts but guilty of the lesser-included offense of voluntary manslaughter. The jury also found that Hinojosa had used a deadly weapon—his hands and a "ligature." Punishment was assessed by the jury at twenty years in prison and a $10,000 fine.

In his first point of error, Hinojosa argues that inconsistencies between the indictment and the jury charge violated his right to due process. More specifically, the due process violation resulted from the use of the disjunctive in the jury charge describing the offense rather than the

2

conjunctive, as used in the indictment—"[t]he alleged means of commission of murder had been changed from hand and ligature, to hands or strangling with a ligature." Hinojosa contends that he "did not receive notice that the state alleged that the means of the commission of the alleged offense included striking with hands only, in addition to hands and ligatures."

When reviewing allegations of charge error, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). When a timely objection is made, error in the jury charge requires reversal if the error was "calculated to injure the rights of defendant"—that the error was not harmless. *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *see also Abdnor*, 871 S.W.2d at 731-32.

Where, as here, no timely objection was made at trial, any error found will not warrant reversal unless the error is so egregious that the defendant was not given a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984). An error in the jury charge is egregious if "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* We determine the actual degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

Based on the indictment, the jury was required to find beyond a reasonable doubt that Hinojosa caused Chavez's death by using both a hand and a ligature as deadly weapons. We first

3

note that the offense for which Hinojosa was convicted was voluntary manslaughter, not murder, and the language about which he complains appears nowhere in the voluntary manslaughter portion of the jury charge. Rather, after the jury had found Hinojosa not guilty of murder, the jury was instructed to determine, "as alleged in the indictment," whether Hinojosa "intentionally or knowingly cause[d] the death of" Chavez by "striking [him] about the face or neck or by hog-tying [him], while acting under the influence of sudden passion arising from and [sic] adequate cause." Hinojosa was not convicted of the greater offense in which the complained-of language appears, but of a lesser offense in which the complained-of language does not appear. Thus, even if there is charge error, it is part of a greater offense for which Hinojosa was not convicted and, therefore, caused no harm. *See* Tex. Code Crim. Proc. Ann. art. 36.19; *see also Abdnor*, 871 S.W.2d at 731-32.

Even if the language about which Hinojosa complains had appeared in the voluntary manslaughter portion of the charge, there would have been no charge error. The Texas Constitution requires a unanimous verdict in felony cases, Tex. Const. art. V, § 13; *see also* Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2008), but a defendant's right to unanimity is not violated when the jury is disjunctively instructed on alternate means or theories of committing the same offense. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004). If, as here, the disjunctive paragraphs merely inform of different means of committing a single offense, then the jury does not have to unanimously agree on which alternative means the defendant used to commit the offense. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). In addition, the Court of Criminal Appeals has found no error where, as

4

here, the indictment alleges the differing methods of committing the offense in the conjunctive, while the jury is charged in the disjunctive. *See id.* We overrule Hinojosa's first point of error.

In his second point of error, Hinojosa argues that the district court erred by adopting and following defense counsel's misstatement of the law regarding a condition of probation eligibility. On the record at trial, but outside the presence of the jury, defense counsel told Hinojosa that "if you testify, then you are subject to cross-examination" but "if you don't testify, then you will not be eligible for community supervision." Hinojosa responded that he understood, that he did not want to testify, and that he wanted just to "finish with this." According to Hinojosa, the fact that he was sentenced to the maximum sentence available for voluntary manslaughter:

> was caused by two errors that are the following: 1) a misstatement of the law by Mr. Hinojosa's trial counsel, and adopted by the court and state, prevented Mr. Hinojosa from seeking probation from the jury; and 2) by not being allowed to introduce mitigating evidence making him eligible for probation, Mr. Hinojosa's right to allocution was violated.

It appears that Hinojosa is arguing that, although he was eligible for probation, because of a misstatement of the law by defense counsel—and adoption of this misstatement by the prosecutor and the district court—the jury was unable to consider probation as an option. While Hinojosa attempts to implicate the district court and the prosecutor, his argument is one based on ineffective assistance of counsel.[1]

---

[1] Before expressly asserting his ineffective assistance argument and without citing to any authority or specifying any particular point at which reversible error was committed, Hinojosa argues that "constitutional error" occurred. He argues, for instance:

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*.[2]  *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999).  In deciding a claim of ineffective assistance of counsel at a noncapital sentencing proceeding, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense.  *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  An attorney's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812.  Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different.  *Strickland*,

---

> If the state should attempt to argue that Mr. Hinojosa's trial counsel was at fault alone, Mr. Hinojosa wishes to remind them that they adopted such misstatement of the law when they failed to object or correct the error, and the same reasoning holds the court responsible, as well.  However, should the reviewing court find that Mr. Hinojosa's trial attorney failed to get the requisite evidence into the record that would warrant a jury eligibility charge, then Mr. Hinojosa requests that the reviewing court find sua sponte that his trial counsel was ineffective under the *Duffy* standard under *Ware*.

[2]  Hinojosa urges us to apply the *Duffy* standard, which includes no requirement that the defendant show prejudice.  *See Ex parte Duffy*, 607 S.W.2d 507, 516 (1980).  However, the Court of Criminal Appeals has expressly overruled *Duffy* on that point, as conflicting with federal constitutional law:

> *Strickland* clearly requires a showing of prejudice for all claims alleging deficient attorney performance primarily because the government is not responsible for and cannot prevent deficient attorney performance. . . .  Assuming *Strickland* left open the question of whether a defendant is required to show prejudice from deficient attorney performance at noncapital sentencing proceedings, we perceive no valid reason why *Strickland* cannot apply, or why a different rule should apply, to noncapital sentencing proceedings.

*Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 814. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Id.* at 813.

In most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy. *See Thompson*, 9 S.W.3d at 814. Where an allegation of ineffective assistance of counsel is not raised in a motion for new trial, trial counsel has no opportunity to explain his conduct, and absent such opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

To be eligible for probation, a defendant's sworn application for probation and the evidence must show that he has never been convicted of a felony. *Green v. State*, 658 S.W.2d 303, 308 (Tex. Crim. App. 1983). The mere filing of a sworn application is not sufficient to show eligibility for probation. *Id.* at 309. In an attempt to introduce evidence of probation eligibility,

7

defense counsel instructed Hinojosa outside the presence of the jury that "if you don't testify, then you will not be eligible for community supervision." Although Hinojosa declined to testify during the punishment phase, defense counsel introduced no other evidence that would support Hinojosa's eligibility for probation. Hinojosa now contends that defense counsel could have presented evidence of Hinojosa's probation eligibility in "numerous ways." According to Hinojosa:

> The state could have stipulated to the fact that he did not have prior felonies. Because his mother was ill, his trial attorney or the court could have requested a continuance for the sentencing, or order to obtain a witness who could testify to Mr. Hinojosa's lack of prior felonies. Mr. Hinojosa's trial attorney could have requested a judicial finding or notice regarding the lack of prior felonies, and such request could have been supported by a TCIC/NCIC criminal history report for Mr. Hinojosa. The court would have needed to order the state to provide such report, or the state could have offered the history report on their own. The state should have offered this report in compliance with their professional responsibility to seek justice. If they were confident that they would have gotten a jail sentence, the state should have had no problem "doing the right thing," in this regard. Mr. Hinojosa's trial counsel did not have access to official law enforcement data bases that are available to the court and the state. Had Mr. Hinojosa's trial counsel known that his family would be unavailable, he would have questioned the probation officer testifying on the state's behalf, or called Mr. Hinojosa's brother, who was available the day before the final sentencing proceeding. Mr. Hinojosa's trial counsel should have considered submitting an affidavit of his own, stating that Mr. Hinojosa did not have prior felonies, or submitted information on the basis that any other witness was unavailable, requesting that the court find other evidence admissible for this issue as an exception the hearsay evidentiary rule.

Although Hinojosa filed a motion for new trial, he did not raise ineffective assistance of counsel as a ground for relief, and therefore, no record was ever developed in support of this claim. Hinojosa relies solely upon the reporter's record, which contains no evidence of defense counsel's reasoning or thought process. While Hinojosa suggests "numerous ways" by which the evidence could have been presented, without a developed record on appeal, we may only speculate

8

as to whether any of these methods was feasible in light of the circumstances. Based on the available record on appeal, we could also speculate as to any number of reasons why defense counsel did not pursue any of Hinojosa's suggestions for presenting evidence of probation eligibility. However, as Hinojosa's motion for new trial failed to raise ineffective assistance of counsel, we have no record from which to determine why defense counsel acted in the way that he did. In the absence of such record, we presume a sound trial strategy.[3] *See Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814.

Further, Hinojosa has not proven by a preponderance of the evidence that the outcome would have been different but for the lack of evidence of probation eligibility. *See Strickland*, 466 U.S. at 687. The jury imposed a sentence of twenty years, the maximum sentence available for voluntary manslaughter. In light of the twenty-year sentence, Hinojosa would not have been statutorily eligible for probation, and the record indicates no reasonable probability the twenty-year sentence imposed would have been different if probation had been considered. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3(e)(1) (West Supp. 2008) (defendant not eligible for community supervision if sentenced to a term of imprisonment exceeding ten years). Accordingly, we overrule Hinojosa's second point of error.

In his third point of error, Hinojosa argues that the evidence was legally and factually insufficient to support the judgment of conviction. In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of

---

[3] We also note that several of Hinojosa's suggested methods of introducing evidence of probation eligibility would have required action by the prosecutor or the district court, not defense counsel.

fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury may also draw reasonable inferences from basic facts to ultimate facts. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and will set aside the verdict only if we are able to say, with some objective basis in the record, that the conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We cannot conclude that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See id.* at 417; *Fuentes*, 991 S.W.2d at 271. The fact-finder may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In our review, we discuss the evidence that, according to appellant, undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

For sufficiency reviews, the starting point of the analysis is the charge that was submitted to the jury, absent complaint on appeal. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The jury found Hinojosa guilty of "intentionally or knowingly caus[ing] the death of . . . Edward Chavez, Jr., while acting under the influence of sudden passion arising from and [sic] adequate cause." The evidence shows that, on the night of Chavez's death, Hinojosa and Chavez were highly intoxicated and fought violently, both in the parking lot of the hotel and in the hotel room. While Hinojosa claims that he bound Chavez with the phone cord in a "desperate" attempt to restrain him and that Chavez was still conscious when Hinojosa left the premises in Chavez's car, the medical examiner testified that Chavez died of asphyxia resulting from injuries to the face and neck and from the manner in which he had been tied. According to the medical examiner, Chavez's injuries, including a broken thyroid cartridge, bruising of the neck muscles, and hemorrhaging in the eyes, were consistent with death by asphyxiation. In further support of his conclusion that Chavez was already unconscious when bound by Hinojosa, the medical examiner noted that Chavez's hands had not been bound and that Chavez would presumably have removed the cord from his mouth had he been conscious.

Hinojosa refers to "suspicious circumstances regarding the elements of decedent's death" such that "[a] jury could not have reasonably inferred that Mr. Hinojosa did not [sic] in fact kill decedent, or legally possessed [sic] the requisite mens rea." The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). As such, the jury was free to believe or disbelieve Hinojosa's version of events. Hinojosa, himself, admits that, while the record contains conflicting evidence,

11

"it is possible that Mr. Hinojosa's actions in restraining decedent contributed to his death." Viewed in its totality, the evidence is legally and factually sufficient to support the judgment of conviction. Accordingly, we overrule Hinojosa's third point of error.

Having overruled Hinojosa's points of error, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 27, 2009

Do Not Publish

12