Alexander Rey MARTINEZ, Appellant,

v.

The STATE of Texas.

No. 74535.

Court of Criminal Appeals of Texas.

March 3, 2004.

Floyd W. Freed, III, Houston, for Appellant.

Shirley Cornelius, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KEASLER, J., delivered the opinion for a unanimous Court.

Alexander Rey Martinez was convicted in December 2002 of capital murder.[1] Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced Martinez to death.[2] Direct appeal to this Court is automatic.[3] Martinez raises five points of error challenging his conviction. We reject his contentions and affirm.

■ In his first point of error, Martinez claims the trial court erred in overruling his objection to the State's jury argument at guilt or innocence that the jurors need not agree on which underlying offense appellant committed, either robbery or aggravated sexual assault. The indictment charged Martinez with the alternative theories of murder committed in the course of committing and attempting to commit robbery, and murder committed in the course of committing and attempting to commit aggravated sexual assault. The jury charge permitted the jury to find appellant committed either of the underlying offenses. The prosecutor argued in closing that "as long as you 12 people agree that he's guilty of capital murder, you need not all agree ... which felony he's committed."

■ When an indictment alleges differing methods of committing capital murder

in the conjunctive, the jury may properly be charged in the disjunctive.[4] Martinez concedes the existence of this precedent, but argues that allowing the jury to be split on which theory supports the verdict runs afoul of the unanimity requirement in Article 36.29(a) and defeats the purpose of the specific provisions for capital murder within Penal Code § 19.03(a)(2).

The unanimity requirement is not violated by instructing the jury on alternative theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents.[5] Jury argument referring to a point of law that is properly contained within the charge is permissible. Point of error one is overruled.

■ In points of error four and five, Martinez claims the evidence is legally and factually insufficient to support his conviction for capital murder in that the State failed to prove aggravated sexual assault beyond a reasonable doubt. Martinez concedes that he murdered the victim, but claims that the only evidence supporting a finding that he committed the murder in the course of committing or attempting to commit aggravated sexual assault came from a "jail snitch" who was not worthy of belief.

Martinez gave three different versions of the offense to police. In his first confession, videotaped on August 23, 2001, he stated that he arranged a meeting with the victim, a prostitute, on the phone. He agreed to the victim's price of over two hundred dollars, but he "told her that just to get her there." He stated that he really

---

1. Tex. Penal Code Ann. § 19.03(a).

2. Art. 37.071 § 2(g). Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.

3. Art. 37.071 § 2(h).

4. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim.App.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

5. *See Francis v. State*, 36 S.W.3d 121, 124 (Tex.Crim.App.2000).

planned on trying "to get it for free." He stated that he met the victim at a mall and they got into her car and began driving. When he attempted to negotiate the price with the victim as they were driving, she became upset. Martinez told the victim to pull over so he could use the phone and when she stopped, he dragged her out of the car and cut her throat with a knife. He said he killed her because he did not like the way she was talking to him. He did not mention anything about sexual contact with the victim.

Martinez gave a written statement the following day. This statement was largely consistent with the first statement except that he also stated that he took $150.00 in cash and some cocaine from the victim after he killed her. He reiterated that he agreed to the price for the victim's services on the phone but stated again that he "never intended to pay her that much money." He stated that he "didn't have any money at all." Again, he did not mention sexual contact with the victim.

In a third interview Martinez admitted to killing the victim in his room at his mother's house. He stated that he had not been truthful about where he killed the victim because he was trying to protect his mother. In this interview, most of which was taped, Martinez stated that he had sex with the victim before stabbing her and that the victim "complied" with the sex. He also stated, however, that he did not pay her and never intended on paying her. He said he stabbed the victim when she "started tripping" about the money. She wanted to be paid around three hundred dollars and when Martinez told her he would not pay her, the victim started to leave. He said he grabbed her and "put the knife to her."

Cesar Rios, a cell mate of Martinez's at the Harris County Jail, testified for the State. Rios acknowledged his own pending criminal charges for unauthorized use of a motor vehicle and aggravated assault. Because he was a "habitual offender" Rios stated that the punishment range for the offenses was two to twenty years and twenty-five to ninety-nine years or life, respectively. Rios testified that could not read and write and that he did not learn any of the facts of the case from any source other than Martinez. Rios testified that Martinez told him about the offense during the course of two different conversations. Martinez told Rios that he contacted the victim through a phone number for an escort service. On the phone, he agreed to the victim's price of $300 which would make her trip across town worthwhile. Martinez told Rios that he really only had $30. Martinez explained that when the victim arrived at his house she sat down on the floor in his room and they began discussing money. The victim wanted the money first and when it became apparent that Martinez did not have it, she got mad and tried to leave. Martinez attempted to stall her, and she again asked him to see the money. Martinez then said the victim "started going off on him." He told Rios that he had a knife in his pocket and when she said she was leaving and started gathering her things, Martinez put the knife to the side of her neck. He said she was still sitting on the floor and he pushed her back. He then got on top of the victim to have sex and pushed the knife into her neck. According to Rios, Martinez told him he was "inside of" the victim attempting to have sex with her when she kicked him off of her. The victim was bleeding and began begging him not to kill her and to call an ambulance. She told him that if he killed her, there would be no one to take care of her dog. Martinez told her to be quiet so as not to wake the others in the house and tried to figure out how he could kill her without making too much noise. He final-

ly sliced across her throat. After she was dead, Martinez put a towel over her sliced throat and had sex with her. He told Martinez he also played with sex toys he found in the victim's bag. When he was done, he stated that he folded the victim up and put her in a trash bag. He kept the body in his closet for about three days before disposing of the victim and her things. Martinez also described cleaning up his room and replacing the carpet. At the end of his testimony, Rios stated that the prosecutor had offered to drop the unauthorized use and habitual criminal charges against him in exchange for his testimony, the result being that Rios would plead to aggravated assault with a punishment range of two to twenty years.

Other evidence was consistent with and corroborated appellant's confessions and Rios' testimony. Houston police officers testified that the blood spatters and stains found in appellant's room were consistent with appellant's version that the victim was stabbed while sitting on the floor next to his bed. The victim's body was found in a trash bag at the vacant lot where appellant stated he had taken it. The condition of the body and the way in which it was wrapped was consistent with appellant's descriptions. Appellant's brother testified that he had assisted appellant in replacing the carpet in appellant's room. He described the stains on the carpet and also described an unpleasant odor in appellant's room. Finally, the medical examiner testified that although the victim's body was in an advanced state of decomposition when found and was partially "skeletonized," he nonetheless concluded that stabbing to the neck was the cause of death based on hemorrhage in the neck area and cutting lesions to the bones in the neck.

We review the legal sufficiency of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6] Viewing the evidence in a light most favorable to the verdict, the evidence shows that Martinez called the victim, a prostitute, and made arrangements for her to meet him at his house. Martinez told the victim on the phone that he would pay around $300.00 for her services, although he did not intend to pay her anything and had little or no money. Martinez put a knife in his pocket before the victim arrived. The victim began discussing payment immediately upon arrival. Martinez argued about the amount and whether or not he was going to pay. When it became clear that Martinez either had no money or was not going to pay her, the victim became angry, stated that she was going to leave, and began packing her things. Martinez stuck his knife against her neck and pushed her back. He began to attempt sex with her while holding the knife against her neck. The victim kicked Martinez away but he managed to grab her and prevent her from leaving. He then sliced her throat, causing her death. This evidence is legally sufficient to support a finding of murder committed in the course of aggravated sexual assault or attempted aggravated sexual assault beyond a reasonable doubt.

Martinez claims the evidence is factually insufficient to prove aggravated sexual assault for the same reasons he claims it is legally insufficient. Specifically, he argues that Rios' testimony is the only evidence of sexual assault and that Rios is not credible or worthy of belief. Martinez points to his confessions in which he stated that he killed the victim because of the way she was talking to him and being

6. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

disrespectful. He argues that because the victim was a prostitute, the interaction between the victim and Martinez was consensual.

■ Evidence is factually insufficient if, viewing all of the evidence in a neutral light, "the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof."[7] Although a reviewing court is authorized to disagree with the jury's determination, due deference must be given to the fact finder's determinations concerning the weight and credibility of the evidence and reversal of the fact finder's determination is appropriate only to prevent the occurrence of a manifest injustice.[8]

Deferring to the jury's assessment of weight and credibility, Rios' version is believable and is not inconsistent with Martinez's statements. Martinez said nothing about sexual contact in his first two statements. In his third statement, Martinez's comment that the victim "complied" with him could reasonably be interpreted as meaning that the victim did not struggle or fight him as he held her at knifepoint. Moreover, Martinez's theory that the victim had consensual sex with him and then brought up the issue of payment is less believable than Rios' version, considering that the victim had already discussed payment on the phone, was driving a long way across town to Martinez's house, and was conducting a business transaction. Given the discussion between appellant and the victim concerning payment, it would be reasonable to conclude that the victim would have acted in her best interest by obtaining the payment up front. In addition, the level of detail described by Rios and the consistency between Rios' testimony and certain facts described in Martinez's statements and the testimony of other witnesses, lend credibility to Rios' testimony. Considering these factors, the proof of aggravated sexual assault is not so obviously weak as to undermine confidence in the jury's determination, nor is the proof of an aggravated sexual assault greatly outweighed by contrary proof. Points of error four and five are overruled.

■ In his second and third points of error, Martinez claims the evidence is legally and factually insufficient to support his conviction for capital murder in that the State failed to prove robbery beyond a reasonable doubt. In a capital murder case, when the charge authorizes the jury to convict on more than one theory, a guilty verdict will be upheld if the evidence is sufficient on any one of the theories.[9] The indictment alleged that Martinez committed murder in the course of committing or attempting to commit robbery and in the course of committing or attempting to commit aggravated sexual assault. The jury charge authorized conviction on either theory. Because the evidence is legally and factually sufficient on the theory of murder committed in the course of aggravated sexual assault, we will not address the alternatively charged theory of murder committed in the course of a robbery. Points of error two and three are overruled.

The judgment of the trial court is affirmed.

7. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim. App.2000).

8. *Swearingen v. State,* 101 S.W.3d 89, 97 (Tex. Crim.App.2003).

9. *Id.* at 95.