Opinion filed September
29, 2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00342-CR 

                                                    __________

 

                                 BRIAN
SWEARENGIN, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 161st District Court

 

                                                             Ector
County, Texas

 

                                                   Trial
Court Cause No. B-34,061

 



 

O P I N I O N

 

            The
jury convicted Brian Swearengin of capital murder and assessed his punishment
at confinement for life without parole.  We affirm.

            Appellant
brings three issues on appeal.  In his first two issues, appellant contends
that the trial court erred when it overruled appellant’s challenges for cause
against two venirepersons.  He argues in his third issue that the trial court
erred when it submitted a jury charge in which it did not provide for a
unanimous finding of the underlying offense to the capital murder.  Appellant
has not challenged the sufficiency of the evidence.  

            During
voir dire, appellant’s counsel asked the members of the jury panel what they
believed a defendant’s obligation was after the State had presented its
evidence.  Several venire-persons gave varying responses as to what they
thought a defendant was required to do during trial.  The trial court spoke individually
with a number of the venirepersons regarding their responses.  Appellant
exercised challenges for cause against several of those venirepersons.  On
appeal, he complains that the trial court erred when it denied challenges
against Venire-person Armendariz and Venireperson McCarter.  The following
exchanges took place between appellant’s counsels, the trial court, the State, and
the two venirepersons:

                        THE
COURT:  Okay.  Mr. Armendariz, someone has a question.

 

            [DEFENSE
COUNSEL 1]:  Judge, I think Mr. Armendariz -- and don’t let me put words in
your mouth.  But the way I understood it was that you would want some evidence
put on by the Defense; is that correct?

 

                        [VENIREPERSON
NO. 4]:  Yes, sir.

 

            [DEFENSE
COUNSEL 1]:  And that is a firm belief you are going to require it in any case?

 

            [VENIREPERSON
NO. 4]:  Well, not in any case, but particularly this case, it is [a] murder
case.

 

                        [DEFENSE
COUNSEL 2]:  Okay.  In an important case?

 

                        [DEFENSE
COUNSEL 1]:  In an important case.

 

            [PROSECUTOR]: 
Can I ask a question?  If the State doesn’t prove its case beyond a reasonable
doubt, and the Defense doesn’t put on anything, are you going to require
anything of the Defense?

 

                        [VENIREPERSON
NO. 4]:  Can you repeat that?

 

            [PROSECUTOR]: 
If the State doesn’t meet its burden and doesn’t prove its case beyond a
reasonable doubt, you wouldn’t -- would you require anything from the Defense –

 

            [DEFENSE
COUNSEL 1]:  Judge, I really think that is another issue.

 

            [PROSECUTOR]: 
No.

 

            [DEFENSE
COUNSEL 1]:  What he is talking about is -- 

 

            [PROSECUTOR]: 
Can he answer the question?

 

            [DEFENSE
COUNSEL 1]:  What he is talking about is --

 

            THE
COURT:  What?

 

            [DEFENSE
COUNSEL 1]:  -- Mr. Armendariz’s statement was that he would require -- if the
State put on a case, he would require some evidence from the Defense.

 

            THE
COURT:  Is there anything I can say, Mr. Armendariz, that would get you to
change your mind about that?  And I will tell you, the Defendant has no
obligation at all to put on any evidence.  If I tell you that, would that make
you rethink . . . your position?

 

            [VENIREPERSON
NO. 4]:  It would.

 

            THE
COURT:  All right.  So then if the State puts on a case, and the State, in your
mind, did not prove its case, you would not require the Defendant to defend
himself?

 

            [VENIREPERSON
NO. 4]:  Huh-uh.

 

                        .
. . .

 

                        THE
COURT:  Mr. McCarter.

 

                        [DEFENSE
COUNSEL]:  Mr. McCarter, I have got a lot going on up here.

            

                        [VENIREPERSON
NO. 14]:  I understand.

 

            [DEFENSE
COUNSEL]:  A lot of moving parts.  As I understand it, and what you were
stating was that you would want some evidence put on by the Defense, is that a
correct statement of what your understanding was?

 

            [VENIREPERSON
NO. 14]:  That is right.

 

            [DEFENSE
COUNSEL]:  And the State’s case might be strong, it might be weak, but you
would still want to hear from the Defense, and want to hear some evidence?

 

                        [VENIREPERSON
NO. 14]:  Something, yes.

 

                        [DEFENSE
COUNSEL]:  All right.  In the case?

 

                        [VENIREPERSON
NO. 14]:  Yes.

 

                        [PROSECUTOR]: 
In any case?

 

                        [DEFENSE
COUNSEL]:  In any case?

            

                        [VENIREPERSON
NO. 14]:  Yes.

 

            [PROSECUTOR]: 
However you understand the State has the burden of proof, right?

 

                        [VENIREPERSON
NO. 14]:  Right.

 

            [PROSECUTOR]: 
And if the State fails to meet its burden, you will vote, when you vote, not
guilty?

 

                        [VENIREPERSON
NO. 14]:  Yes.

 

                        [PROSECUTOR]: 
Even if the Defense doesn’t put on anything?

            

                        [VENIREPERSON
NO. 14]:  Yes, I will.

 

            [PROSECUTOR]: 
So they can do nothing.  And if we don’t prove our case --

 

            [VENIREPERSON
NO. 14]:  If the State doesn’t prove their case, then I would vote not guilty.

 

            [PROSECUTOR]: 
You were to say earlier preference that you would like to hear.  But obviously
if we don’t prove our burden, they don’t have to do anything; is that correct?

 

            [VENIREPERSON
NO. 14]:  No, that is true.  They don’t have to do anything.

 

                        [PROSECUTOR]: 
And you wouldn’t hold them to that; is that correct?

 

                        [VENIREPERSON
NO. 14]:  Yes.

 

            Appellant’s
challenges were based on Venireperson Armendariz’s and Venire-person McCarter’s
statements regarding a defendant’s obligation to present evidence.  The trial court
overruled both challenges.  The State agrees that appellant properly preserved
the claimed errors.  See Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002) (error is preserved
on denied challenges for cause when an appellant establishes five specific requirements
on the record).

            When
we review a trial court’s decision to grant or deny a challenge for cause, we
look at the entire record to determine whether there is sufficient evidence to
support the trial court’s ruling.  Id.  Before venirepersons may be excused for cause, the law must
be explained to them, and they must be asked whether they can follow that law
regardless of their personal views.  Gardner v. State, 306 S.W.3d
274, 295 (Tex. Crim. App. 2009).  The proponent of a challenge for cause
has the burden of establishing that the challenge is proper.  Id. 
The proponent does not meet this burden until the proponent shows that the
venireperson understood the requirements of the law and could not overcome his
prejudice well enough to follow the law.  Id.

            We review a trial court’s ruling on a challenge
for cause with considerable deference because the trial court is in the best
position to evaluate a venireperson’s demeanor and responses. Id. at
295-96.  When a venireperson’s answers are vacillating, unclear, or
con-tradictory, we accord particular deference to the trial court’s
decision.  Id. at 295.  We reverse a trial court’s ruling on a
challenge for cause only if a clear abuse of discretion is evident.  Id.
at 296.   

            Here, the trial court asked Venireperson
Armendariz whether the law would change his personal feelings about a
defendant’s obligations during trial.  Venireperson Armendariz responded that
it would change his personal opinion.  The trial court then asked, “So
then if the State puts on a case, and the State, in your mind, did not prove
its case, you would not require the Defendant to defend himself?”  Venireperson
Armendariz responded, “Huh-uh.”  Appellant failed to show that Venireperson
Armendariz understood the requirements of the law and yet could not overcome
his personal feelings in order to follow the law; the record as a whole shows
the opposite.  The trial court did not abuse its discretion when it overruled
appellant’s challenge for cause against Venireperson Armendariz.

            For
the same reason, the trial court did not err when it overruled appellant’s
challenge for cause against Venireperson McCarter. After the State explained
the law to him, Venire-person McCarter stated that, even though he originally
stated that his personal preference was for a defendant to put on some
evidence, he would not require a defendant to do anything if the State did not
prove its case.  Appellant failed to show that the challenge was proper.  The
trial court did not abuse its discretion when it overruled appellant’s
challenge to Venireperson McCarter.  We overrule appellant’s first and second
issues.

            Appellant
contends in his third issue that the trial court erred when it submitted a jury
charge in which it allowed the jury to convict him of capital murder if the
jury found that he committed any of the underlying offenses of aggravated
sexual assault, robbery, or burglary of habitation.  Specifically, appellant
argues that he had the right to require a unanimous verdict as to which underlying
offense the jury believed he committed.  He claims that, when the trial court
allowed different jurors to determine that he committed different underlying
offenses, he was deprived of that right.  Appellant also complains that the
prosecutor’s final argument was improper because the prosecutor further
explained that the jurors were not required to unanimously decide which
underlying offense appellant committed.  We disagree.

            As
opposed to instructing a jury on two separate offenses involving separate
criminal statutes, the unanimity requirement is not violated when a trial court
instructs the jury on alternative theories of committing an underlying offense
in a capital murder case.  Martinez v. State, 129 S.W.3d 101, 103 (Tex.
Crim. App. 2004); Kitchens v. State, 823 S.W.2d 256, 257-58 (Tex. Crim.
App. 1991).  In Martinez, the jury charge permitted the jurors to find
that Martinez committed either of two underlying offenses:  robbery or
aggravated sexual assault.  129 S.W.3d at 103.  The court, relying on Kitchens,
found the jury charge to be proper, as well as the State’s jury argument to the
effect that the jurors need not agree on which underlying offense Martinez
committed.  Id.  

            Here,
the jury charge tracked the language of the indictment: “[Appellant] was then
and there in the course of committing or attempting to commit the offense of
aggravated sexual assault or robbery . . . or burglary of a habitation.” 
Although the State alleged in the indictment that appellant committed the
different underlying offenses in the conjunctive, it was proper for the jury to
be charged in the disjunctive.  See Kitchens, 823 S.W.2d at 258.  

            Appellant
concedes that this is the settled law in Texas, but he argues that a non-unanimous
finding of an underlying offense violates two United States Supreme Court decisions: 
Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona,
536 U.S. 584 (2002).  We do not find the applicable law in Texas to be in conflict
with either case.

            In Apprendi,
the Court held, “Other than the fact of a prior conviction, any fact that
increases the penalty for a crime beyond the prescribed statutory maximum must
be submitted to a jury, and proved beyond a reasonable doubt.”  Apprendi,
530 U.S. at 490.  While appellant is correct when he states that the commitment
of an underlying offense must be unanimously found beyond a reasonable doubt
before a defendant can be convicted of capital murder, he is not correct in
relying on Apprendi for the position that alternative means of
committing an underlying offense must be unanimously found by the jury.  The
applicable statute in Apprendi allowed the defendant to be punished for
a first degree felony if he was found guilty of a second degree felony and then
further found guilty of a hate crime by a preponderance of the evidence.  Id.
at 491-92.  Here, that is not the case.  The trial court required the jury
to find appellant guilty of the underlying offense beyond a reasonable doubt.

            Under
Section 19.03(a)(2) of the Texas Penal Code, a person commits capital murder if
“the person intentionally commits the murder in the course of committing or
attempting to commit kidnapping, burglary, robbery, aggravated sexual assault,
arson, obstruction or retaliation, or terroristic threat.”  Tex. Penal Code Ann. § 19.03(a)(2) (Vernon
2011).  Each of the seven offenses listed are different means by which capital
murder may be committed.  Submitting alternative theories on the underlying
offense committed does not violate the unanimity requirement.  Martinez,
129 S.W.3d at 103.

            In Ring,
the Court held that the defendant’s Sixth Amendment right to a jury trial was
violated when the trial judge, sitting alone, determined whether aggravating
factors required for imposition of the death penalty were present.  Ring,
536 U.S. at 609.  Ring is not applicable here because the jury, not the
judge, determined that appellant committed the underlying offense required for the
capital murder conviction; the Sixth Amendment right to a jury trial was not
violated.  We overrule appellant’s third issue.

            The judgment of the trial court is affirmed.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

September 29, 2011

Publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.