02-11-061-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00061-CR

 

 


 
 
 Carey Lamar Morrison
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

----------

 

FROM THE 371st
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          In
two points that concern the trial court’s jury charge, appellant Carey Lamar
Morrison appeals his conviction for burglary of a habitation.  We affirm.

Background
Facts

          One
summer evening in 2010, twelve-year-old Jorge Perez was in the garage of the
home of his grandfather, Jesus Perez, when appellant walked toward Jorge, asked
who was in the house, grabbed Jorge’s collar, and took Jorge into the house.  Appellant
wore a hoodie, had a bandana over his mouth, and pressed a silver gun against
Jorge’s back.[2]  When Jorge and appellant
entered the house, Jesus was watching television in the living room.  Appellant
tapped Jesus on a shoulder and asked for money.  Jesus gave a wallet that
contained approximately $900 to appellant.  Appellant asked for more money, but
Jesus told him that there was no more, which made appellant angry.[3] 
Appellant went with Jorge and Jesus into various parts of the house.

          Eventually,
Jorge’s uncle (and Jesus’s son), Juan, who had heard a voice that he did not
recognize, came out of a restroom and saw appellant.  Juan looked at
appellant’s gun and determined that it was plastic, and then Jesus, Juan, and
appellant began to tussle.[4]  Appellant, who lost
possession of the money and the gun, tried to leave through the garage, but
Juan and Jesus reached him, slammed him into a wall, and continued to fight
against him.  During the altercation, appellant grabbed a plastic toy and hit
Jesus with it twice on Jesus’s head.  Appellant also kicked Jesus’s wife when
she tried to help Jesus and Juan.  As appellant continued to scream and fight,
one of Jorge’s cousins called 911, and a few minutes later, the police arrived. 
Officers struggled to subdue appellant, but they eventually arrested him.  The
officers took pictures of Jesus, who had scrapes on the side of his face,
redness along his hairline, and an “impression like something [had hit] him.”

          A
Tarrant County grand jury indicted appellant with burglary of a habitation. Specifically,
the indictment alleged that appellant had committed burglary by, without
Jorge’s consent, intentionally or knowingly entering a habitation with the
intent to commit robbery.[5]  Appellant retained
counsel and pled not guilty.  During the trial, appellant did not ask questions
of any witness and did not call any.  After the State’s closing argument,
appellant’s counsel gave the following closing argument, in its entirety:

          Did the government prove the charge against [appellant]? 
If they did, then you have to find him guilty.  If -- but if they didn’t prove
every element of that charge against [appellant], every element, you have to
find him not guilty.  That’s the law, and that’s what you swore you would abide
by.  Okay?

          So when you go back there and think about it,
go through the law, if . . . they proved their case, you’ll find him guilty. 
But if they did not prove even one element, then you have to find him not
guilty.

          Thank you.

The
jury deliberated for fifteen minutes before it found appellant guilty.  After
appellant testified in the punishment phase of his trial, the jury assessed his
punishment at five years’ confinement.  The trial court sentenced appellant
accordingly, and he brought this appeal.

The
Robbery Instruction

          In
his first point, appellant argues that the trial court erred by including an
instruction in the guilt-phase jury charge that stated, “Our law provides that
a person commits the offense of robbery if, in the course of committing theft
and with intent to obtain or maintain control of the property, he intentionally
or knowingly causes bodily injury or threatens or places another in fear
of imminent bodily injury or death.”  [Emphasis added.]  Appellant argues that
the italicized part of this instruction was erroneous because there was “no
testimony to support the theory that [he] inflicted ‘bodily injury’ upon
anyone.”  More specifically, appellant contends that the instruction was
improper because although the evidence showed that appellant hit Jesus with a
toy, Jesus did not testify that this caused him physical pain, illness, or
impairment of his physical condition, and the jury was therefore able to
consider a definition of robbery that did not apply to the facts of the case.[6] 
At trial, after both parties rested, the following exchange occurred:

          [DEFENSE COUNSEL]:  . . .  We don’t think there
was any testimony . . . where the witness testified that they had, indeed, in
fact, suffered bodily injury from being hit with anything. . . .  [T]here was
some testimony by the grown son that the older gentleman had been hit with that
plastic toy, but . . . there was no testimony from the actual person who got
hit as to whether that caused bodily injury or not. . . .

          THE COURT:  . . .  I’m going to construe that
as an objection and overrule it.

          Appellate
review of alleged error in a jury charge involves a two-step process.  Abdnor
v. State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); see also Sakil
v. State, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).  Initially, we must
determine whether error occurred; if so, we must then evaluate whether sufficient
harm resulted from the error to require reversal.  Abdnor, 871 S.W.2d at
731–32.  A trial court must deliver to the jury “a written charge distinctly
setting forth the law applicable to the case.”  Tex. Code Crim. Proc. Ann. art.
36.14 (West 2007).

          The
factual contention undergirding appellant’s first point—that there was no
testimony that someone suffered bodily injury as a result of appellant’s
crime—is belied by the record.  As we have explained above, the evidence showed
that appellant hit Jesus with a plastic toy and that officers saw scrapes on
the side of Jesus’s face, redness along his hairline, and an impression like
something had hit him.  This evidence allowed for an inference that Jesus
suffered bodily injury despite the fact that Jesus did not testify directly
that he had suffered physical pain, illness, or impairment of his physical
condition.  See Wingfield v. State, 282 S.W.3d 102, 106 (Tex. App.—Fort
Worth 2009, pet. ref’d) (“Although Russell did not affirmatively testify to any
pain, the State entered into evidence a picture of Russell’s mouth showing a
laceration on his lower lip. . . .  [T]he jury could have reasonably
inferred that Russell suffered pain . . . .”); Arzaga v.
State, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (holding that
although no witness directly testified that the victim suffered pain as a
result of being struck in the mouth by her husband’s fist, the evidence was
sufficient to prove bodily injury because there was evidence that the victim’s
mouth swelled, bruised, and was cut); Goodin v. State, 750 S.W.2d 857,
859 (Tex. App.—Corpus Christi 1988, pet. ref’d) (“The fact of a physical
intrusion on the body in the form of a cut or scrape can itself be sufficient
evidence of the associated physical pain necessary to show ‘bodily injury.’”)

          We
hold that the record precludes the factual assertion upon which appellant
conditions his first point, and we therefore conclude that the jury charge
could not be erroneous for the reason stated by appellant in that point.[7]
 We overrule appellant’s first point.

Jury Unanimity

          In
his second point, appellant contends that the guilt-phase jury charge
erroneously allowed the jurors to return a verdict that was not unanimous.  The
jury charge notified the jury that its verdict must have been “by a unanimous
vote.”  The charge also instructed the jury,

[I]f you find and believe from the evidence beyond a
reasonable doubt, that [appellant] . . . did intentionally or knowingly,
without the effective consent of Jorge Perez, the owner thereof, enter a
habitation with intent to commit robbery, as charged in the Indictment, then
you will find [appellant] guilty of burglary of a habitation with intent to
commit robbery . . . .

Appellant
contends that to appropriately sustain his burglary conviction, the charge
should have required the jury to unanimously decide whether appellant entered
the habitation with the intent to commit robbery by threat or, alternatively,
entered the habitation with the intent to commit robbery causing bodily injury. 
See Tex. Penal Code Ann. §§ 29.02(a), 30.02(a)(1).

          Jury
unanimity is required in all criminal cases by the Texas constitution and the
code of criminal procedure.  Cosio v. State, 353 S.W.3d 766, 771 (Tex.
Crim. App. 2011); Landrian v. State, 268 S.W.3d 532, 535 (Tex. Crim.
App. 2008); Ngo v. State, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005).  Thus,
every juror must agree that “the defendant committed the same, single, specific
criminal act.”  Ngo, 175 S.W.3d at 745; see Bundy v. State, 280
S.W.3d 425, 431 (Tex. App.—Fort Worth 2009, pet. ref’d).  But this does not
mean that the “jury must unanimously find that the defendant committed that
crime in one specific way.”  Landrian, 268 S.W.3d at 535.  In other
words, “[t]he unanimity requirement is not violated by instructing the jury on
alternative theories of committing the same offense, in contrast to instructing
the jury on two separate offenses involving separate incidents.”  Martinez
v. State, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004).  The court of criminal
appeals has identified three situations in which non-unanimity may occur:

          First, non-unanimity may occur when the State
presents evidence demonstrating the repetition of the same criminal conduct,
but the actual results of the conduct differed.  For example, if the State
charges the defendant with the theft of one item and the evidence shows that
the defendant had in fact stolen two of the same items, the jury’s verdict may
not be unanimous as to which of the two items the defendant stole.  To ensure a
unanimous verdict in this situation, the jury charge would have to make clear
that the jury must be unanimous about which of the two items was the subject of
the single theft.

          Second, non-unanimity may occur when the State
charges one offense and presents evidence that the defendant committed the
charged offense on multiple but separate occasions.  Each of the multiple
incidents individually establishes a different offense or unit of prosecution. 
The judge’s charge, to ensure unanimity, would need to instruct the jury that
its verdict must be unanimous as to a single offense or unit of prosecution
among those presented.

          And third and finally, non-unanimity may occur
when the State charges one offense and presents evidence of an offense,
committed at a different time, that violated a different provision of the same
criminal statute.[[8]]  To ensure unanimity in
this situation, the charge would need to instruct the jury that it has to be
unanimous about which statutory provision, among those available based on the
facts, the defendant violated.

Cosio,
353 S.W.3d at 771–72 (citations and footnotes omitted).

          None
of the dangers for non-unanimity that the court of criminal appeals described
in Cosio or in Ngo are present in this case.  Here, to obtain a
burglary conviction, the State charged appellant with committing only one
criminal act:  entering a habitation, without consent, with the intent to
commit a felony (in this case, robbery).  See Tex. Penal Code Ann. §
30.02(a)(1).  The State was not required to prove that appellant committed
robbery; it was only required to prove that he intended to do so when he
entered Jorge’s habitation.  See Gonzales v. State, 517 S.W.2d 785, 788
(Tex. Crim. App. 1975); Cotton v. State, 645 S.W.2d 907, 908 (Tex. App.—Fort
Worth 1983, no pet.).  As the court of criminal appeals explained in Ex
parte Cavazos, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006), the “gravamen of
a burglary is the entry without the effective consent of the owner and with the
requisite mental state. . . .  The offense is complete once the unlawful entry
is made, without regard to whether the intended theft or felony is also
completed.”  Thus, we conclude that under section 30.02 of the penal code, the possible
intended felonies that coordinate with a defendant’s entering a habitation
without consent do not create separate offenses, and the jury is not required
to be unanimous about the elements of those underlying felonies.  Instead, the
jury must simply be unanimous that the defendant entered a habitation with the
intent to commit a felony.  See White v. State, 208 S.W.3d 467, 468–69
(Tex. Crim. App. 2006) (holding that when the State alleged two felonies that
could have served as the basis for a felony murder conviction, the jury was not
required to be unanimous concerning which underlying felony that the defendant
had committed); Martinez, 129 S.W.3d at 103 (holding that a jury was not
required to agree on which underlying felony a defendant committed, between
robbery or aggravated sexual assault, when the jury convicted him of capital
murder); Davis v. State, 268 S.W.3d 683, 711 (Tex. App.—Fort Worth 2008,
pet. ref’d) (explaining that jury unanimity is “not violated . . . when the
jury disagrees on alternate theories of the defendant’s mens rea at the
time of the offense” and therefore holding that the jury was not required to be
unanimous about which mental state the defendant had when he committed murder).

          Like
the felony murder statute at issue in White, which required that the
defendant committed or attempted to commit “a felony” to sustain a felony
murder conviction, section 30.02(a)(1) required that appellant intended to
commit “a felony” to sustain appellant’s burglary conviction.  See Tex.
Penal Code Ann. § 30.02(a)(1); see also Ratliff v. State, 320 S.W.3d
857, 864 (Tex. App.—Fort Worth 2010, pet. ref’d) (explaining that the question
of what a jury must be unanimous about is determined by the legislative intent
of the applicable statute).  Thus, the jury was required to unanimously agree
that appellant intended to commit a predicate felony when he entered the
habitation, and because robbery was the only felony alleged, the jury was
required to unanimously agree that appellant intended to commit robbery.  See White,
208 S.W.3d at 468.  But under the rationale of the cases herein, and under the
facts of this case, we hold that the jury was not required to unanimously agree
about whether, at the time appellant entered the habitation, he intended to
cause bodily injury or to threaten bodily injury or death, which are the methods
of committing robbery.  See id. (“[I]n cases like this, where some of
the jurors might believe that the defendant committed felony A and the rest of
the jurors might believe that he committed felony B, the jury has unanimously
found that the defendant committed a ‘felony.’); see also Valdez v. State,
218 S.W.3d 82, 84–85 (Tex. Crim. App. 2007) (holding that a jury was not
required to unanimously decide which two of several alleged prior felony
convictions supported the enhancement of the defendant’s punishment because the
penal code’s enhancement provision states only that the State is required to
prove “two felony offenses”); Adeyanju v. State, No. 14-08-00305-CR,
2009 WL 3371369, at *4–5 (Tex. App.—Houston [14th Dist.] July 7, 2009, pet.
ref’d) (mem. op., not designated for publication) (holding that a jury was not
required to unanimously agree about how a defendant committed money laundering
when money laundering was a predicate offense of engaging in organized criminal
activity).

          For
these reasons, we disagree with appellant’s contention that the guilt-phase
jury charge erroneously allowed for a non-unanimous verdict, and we overrule
his second point.

Conclusion

          Having
overruled both of appellant’s points, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 26, 2012









[1]See Tex. R. App. P. 47.4.





[2]Jorge testified at trial
that he became afraid and felt threatened when appellant approached him.  The
police later determined that appellant had been carrying a BB gun.





[3]Jesus said that he gave
appellant money so that appellant would not “beat up [Jorge].”  Jesus also
testified that he was worried for Jorge’s safety because appellant had a gun.





[4]Fort Worth Police
Department Officer Tom Gierling testified that the gun was made of metal.





[5]The indictment, therefore,
charged appellant with a first-degree felony.  See Tex. Penal Code Ann. §§
29.02(a), 30.02(a)(1), (d) (West 2011).





[6]See Tex. Penal Code
Ann. § 1.07(a)(8) (West Supp. 2011) (defining bodily injury as “physical pain,
illness, or any impairment of physical condition”).  “Bodily injury” broadly
encompasses “even relatively minor physical contacts so long as they constitute
more than mere offensive touching.”  Lane v. State, 763 S.W.2d 785, 786
(Tex. Crim. App. 1989).





[7]The State argues that the
instruction about the definition of robbery that we have quoted above would
have been proper even if there had not been evidence of bodily injury.  We
decline to address this argument, and we express no opinion on it.  See
Tex. R. App. P. 47.1 (requiring appellate courts to address “every issue . . .
necessary to final disposition of the appeal”); Smith v. State, 316
S.W.3d 688, 700 n.2 (Tex. App.—Fort Worth 2010, pet. ref’d).





[8]This occurred in Ngo
when the defendant had been charged with credit card abuse, and his indictment
alleged that he had stolen a credit card, had received a stolen credit card,
and had fraudulently presented a credit card to pay for goods and services. 
175 S.W.3d at 740–41.  The application paragraphs of the jury charge instructed
the jury to find Ngo guilty if the jury concluded that he had committed any of
the three acts in the indictment, and the jury charge did not state that the
jury was required to unanimously agree on which of the three acts that Ngo
committed.  Id. at 742 & n.5.