COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JAIME LUEVANO,

§

No. 08-10-00154-CR

Appellant,

§

Appeal from the

v.

§

409th District Court

THE STATE OF TEXAS,

§

of El Paso County, Texas

Appellee.

§

(TC#20070D04788)

§

## **O P I N I O N**

Jaime Luevano appeals his conviction for burglary of a habitation, a first degree felony.[1]

We affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

In September 2007, nine-year-old A.C. lived in the home of her father along with her grandmother and uncle. A.C. and her family spent the night of September 2, 2007, at a church bazaar where A.C. bought a glow-in-the-dark necklace. At around midnight, the family returned home and went to bed. In the early morning of September 3, 2007, A.C. awoke because she felt something licking her buttocks. At first she thought it was her dog, but when she opened her eyes she saw a man. She was able to identify Appellant as the man licking her because she saw his face in the light from the glow-in-the-dark necklace hanging over her bed. At that point, A.C. screamed, the man ran, and A.C. went to her grandmother's room. A.C. told her grandmother that

---

[1] Appellant was also indicted in cause number 20070D04789 for burglary of a habitation with intent to commit a theft, a second-degree felony. The case was consolidated for trial with the present case. He was found guilty of both offenses. Appellant has appealed both convictions, and we have addressed them as companion cases. The companion case on appeal is 08-10-00159-CR.

someone had broken into the house and that a man with a ponytail had licked her buttocks. A.C.'s grandmother got out of bed to look around and found that the front door was unlocked. She checked outside of the home, but did not see anyone. According to A.C.'s grandmother, A.C. appeared frightened and was crying. Because A.C. had constant nightmares, the family decided not to call the police because they believed A.C. had another bad dream. The next morning A.C. repeated the same story to her family and her father called the police. Crime Scene Unit Officer Juan Montelongo was dispatched to A.C.'s home on a burglary of a habitation. Montelongo testified that when he arrived at the home, police were already on the scene, and based on what he was told, he believed there was potential evidence at the scene. Montelongo took pictures of the home and hoped to collect latent fingerprint and DNA evidence. Because A.C. was traumatized and because she was already familiar with Officer Jessica Martinez, Montelongo requested that Martinez collect DNA swabs from A.C. Montelongo instructed Martinez on how to collect DNA evidence from A.C., but he was not in the room when Martinez performed the collection. Martinez took two swabs from A.C.'s buttocks region and two swabs from another area to be used as controls to rule out A.C.'s DNA. After Martinez collected the DNA evidence, she immediately handed it over to Montelongo who then completed the required paperwork and turned it into the property office. Detective Mary Beth Pena of the Crimes Against Children Unit was assigned to the case. On September 3, 2007, Pena conducted a forensic interview with A.C. She and her partner, Detective Bowling also took statements from A.C.'s father, grandmother, and uncle. The next day, Pena showed A.C. a photo lineup, and A.C. identified Appellant as the suspect.[2] After concluding that an offense did occur, an arrest warrant was issued for Appellant for the offense of

---

[2] Appellant was included as a possible suspect due to his involvement in another crime on the same night of this offense which occurred in the same area of A.C.'s home.

2

burglary of a habitation with intent to commit an aggravated sexual assault. A search warrant was also issued to obtain buccal swabs from Appellant's mouth.

On September 13, 2007, Montelongo submitted the DNA evidence collected from both A.C. and Appellant for DNA testing to the Texas Department of Public Safety Crime Laboratory. The DPS Crime Lab requested buccal swabs from A.C., which would be used as a control during the DNA analysis. Christine Ceniceros, a forensic scientist with the DPS Crime Lab, compared Appellant's known DNA profile with the DNA extracted from the buttocks swabs that had been collected from A.C. by Officer Martinez. She determined that the DNA extraction from the buttocks sample contained a mixture of DNA that was consistent with DNA from both A.C. and Appellant. Ceniceros' written report indicated that with respect to Appellant's DNA, the probability of selecting an unrelated person at random who could be a contributor to this DNA profile is approximately 1 in 13.96 billion for Caucasians, 1 in 21.2 billion for Blacks, and 1 in 5.362 billion for Hispanics. Ceniceros also determined that Appellant could not be excluded as a contributor to the DNA profile obtained from the buttocks swabs.

At trial, A.C.'s father testified that Appellant did not have consent to enter his home. A.C. made an in-court identification of Appellant as the man who entered her bedroom and licked her buttocks. Appellant testified in his own defense. He stated that he had been asleep in his home the morning of September 3, and was startled by the police banging on his door that morning. He further testified that he never knew A.C. prior to this incident. Appellant claimed that A.C. was lying, and that she was brainwashed by the State. The jury rejected Appellant's defense, found him guilty of burglary of a habitation with intent to commit a felony as charged in the indictment,

found the enhancement paragraph true, and assessed his punishment at life imprisonment. This appeal followed.

## DISCUSSION

Appellant raises ten issues on appeal. In Issue One, Appellant contends that the trial court erred in submitting a jury charge that allowed a non-unanimous verdict.

### *Unanimous Verdict*

Jury verdicts in criminal cases must be unanimous. *Cosio v. State,* 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Ngo v. State,* 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West 2006). The unanimity requirement is satisfied when each juror agrees the defendant committed a single offense. *Ngo*, 175 S.W.3d at 745; *see Bundy v State*, 280 S.W.3d 425, 431 (Tex. App. – Fort Worth 2009, pet. ref'd). However, the jury is not required to agree that the offense was committed in one specific way or even with one specific act. *Ngo*, 175 S.W.3d at 745-46; *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (citing *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006)).

To determine the offense about which a jury must reach a unanimous decision, we evaluate whether the statute defining the offense created multiple separate offenses or only a single offense with multiple methods or alternate means of commission. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007); *see also Martinez v. State,* 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Our first step is to apply basic rules of grammar to the applicable statutory text to distinguish between the essential and nonessential elements. *Pizzo*, 235 S.W.3d at 714. The essential elements of an offense are: (1)

4

the subject, or defendant; (2) the main verb; (3) the direct object of the main verb, if required; (4) the specific occasion; and (5) the requisite mental state. *Id.* at 714-15. The nonessential elements for which unanimity is not required are typically adverbial phrases describing how the offense can be committed. *Id.* at 715. When the jury is allowed to choose between alternate means of commission there is no violation of the unanimity requirement. *Id.*

In the present case, Appellant was charged with burglary of a habitation with intent to commit a felony pursuant to Texas Penal Code section 30.02(a)(1). *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). The gravamen of a burglary offense is the nonconsensual entry of the habitation with the requisite mental state. *Ex parte Cavazos,* 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). The jury charge in relevant part, read as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of September 2007 in El Paso County, Texas the Defendant JAIME LUEVANO,
>
> **Paragraph A**
>
> did then and there intentionally or knowingly, without the effective consent of [J.C.], the owner, enter a habitation, with intent to commit a felony, to wit: Aggravated Sexual Assault of a Child,
>
> **Or**
>
> **Paragraph B**
>
> did then and there intentionally or knowingly, without the effective consent of [J.C.], the owner, enter a habitation, with intent to commit a felony, to wit: Indecency with a Child, then you shall find the Defendant Guilty of Burglary of Habitation as alleged in the Indictment (**VERDICT FORM A**).
>
> Unless you so find beyond a reasonable doubt or you have a reasonable doubt thereof, you shall find the Defendant, JAIME LUEVANO, Not Guilty of Burglary of a Habitation. (**VERDICT FORM B**) [Emphasis added].

Appellant argues that this charge improperly allowed the jury to convict him of burglary of a habitation with the intent to commit a felony without requiring the jury to unanimously agree on aggravated sexual assault of a child or indecency with a child as the underlying offense. We disagree. Neither the acts of aggravated sexual assault of a child or indecency with a child constitute the essential elements or the gravamen of a burglary of a habitation offense. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2011). Rather the two acts are alternate means of committing the offense. *See Martinez,* 129 S.W.3d at 103; *Kitchens,* 823 S.W.2d at 258. Accordingly, we hold there was no error because the jury was only required to unanimously agree that Appellant committed burglary of a habitation with intent to commit a felony, and did not have to unanimously agree on the alternate means of commission. *See Martinez,* 129 S.W.3d at 103; *Kitchens,* 823 S.W.2d at 258; *see also Brown v. State*, No. 05-07-00939-CR, 2010 WL 425063, at *6 (Tex. App. – Dallas Feb. 8, 2010, no pet.). Issue One is overruled.

### *Double Jeopardy*

In Issue Two, Appellant argues that the State caused a mistrial by knowingly failing to exercise its peremptory challenge to exclude a juror who was recognized by A.C., and therefore a retrial of the case was barred by the Double-Jeopardy Clause.[3] U.S. CONST. AMEND. V, XIV, § 1; TEX. CONST. art. I, § 10.

The Fifth Amendment's Double-Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct.

---

[3] In September 2009, after a jury was duly empaneled and sworn to try Appellant on the indictment in the present case, A.C. recognized one of the jurors as one of her school teachers. After this discovery, the trial court reviewed the juror's *voir dire* answer and found that the juror had stated that she knew a person by the same name as A.C., but was unsure if it was the same person. The trial court granted Appellant's motion for mistrial on the grounds that the juror could not be impartial to Appellant. In the case before us, Appellant filed a special plea of jeopardy which the trial court denied after a hearing.

6

2083, 2087, 72 L.Ed.2d 416 (1982). However, when a mistrial is granted at the accused's request, double jeopardy does not bar a retrial. *Id.* at 672-73. Double jeopardy bars retrial after the accused shows that the prosecutor's conduct was intentional in provoking him to move for mistrial. *Id.* at 679. In determining whether the prosecutor intended to provoke the accused into moving for a mistrial, we must focus on "the objective facts and circumstances of the prosecutor's conduct and the events which led to that conduct." *Ex parte Peterson*, 117 S.W.3d 804, 815 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

The State argues that Appellant failed to preserve this issue for review by presenting an inadequate record. We agree. The record before us consists only of Appellant's special plea of jeopardy and the reporter's record from a pretrial hearing on the plea. While the reporter's record shows that the trial court and Appellant's counsel briefly discussed the events of the prior trial and that Appellant's plea was denied because the mistrial was based on manifest necessity, the record is not sufficiently developed to address whether the State's conduct caused a mistrial at Appellant's request. *See Anderson v. State*, 635 S.W.2d 722, 725 (Tex. Crim. App. 1982); *Dedmon v. State*, 478 S.W.2d 486, 489 (Tex. Crim. App. 1972).

Even assuming the record before us is sufficient, we do not find any evidence to establish that prosecutorial misconduct caused the mistrial. The record shows that a mistrial was requested by Appellant because A.C. recognized one of the jurors as her school teacher, and that the mistrial was based on manifest necessity. Under these facts, double jeopardy did not attach and retrial is not barred. *See Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (manifest necessity for the mistrial when a juror was found to be acquainted with the accused);

7

*Kennedy*, 456 U.S. at 672 (double jeopardy is not implicated and retrial is permitted where mistrial is based on manifest necessity).   Issue Two is overruled.

*Cruel and Unusual Punishment*

In Issue Three, Appellant contends that the sentence imposed by the jury is harsh and disproportionate to the offense of burglary of a habitation and constitutes a violation of the Eighth Amendment of the United States Constitution.   At sentencing, Appellant pleaded true to an enhancement paragraph alleging two prior felony convictions and the jury assessed his punishment at life imprisonment.

Generally, punishment assessed within the statutory range is not unconstitutionally cruel or unusual.   *See Rummel v. Estelle*, 445 U.S. 263, 284-85, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Ex parte* Chavez, 213 S.W.3d 320, 323-24 (Tex. Crim App. 2006); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App. – Dallas 2003, no pet.).   However, if a sentence within the statutory range is disproportionate to the crime, it may still run afoul of the Eighth Amendment.   *See Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983).   The permissible range of confinement for burglary of a habitation, a first-degree felony offense, enhanced by two prior and sequential felony convictions, is life or for any term of not more than ninety-nine years or less than twenty-five years.   TEX. PENAL CODE ANN. § 12.42(d) (West 2011).

Here, the life sentence imposed by the jury was within the allowable statutory range, and therefore, was not unconstitutionally harsh and disproportionate.   *See id*.   Furthermore, the jury considered evidence of Appellant's three prior felony convictions, one for burglary of a habitation and committing or attempting to commit sexual assault and two concurrent convictions for failure to stop and render aid.   In determining the proper sentence, the jury could also have considered

that they found Appellant guilty of a separate burglary of a habitation offense in cause number 20070D04789.

As the State points out there is a legitimate need to deter repeat offenders who commit multiple felonies. *See Rummel*, 445 U.S. at 284. Particularly as here in what is an all too common scenario of illegal entry of a home for the purpose of committing a felony. Because the sentence imposed was within the allowable statutory range, we will not disturb the jury's assessment on appeal. *See Castaneda*, 135 S.W.3d at 723; *see also Buster v. State*, 144 S.W.3d 71, 81 (Tex. App. – Tyler 2004, no pet.) (in determining whether a sentence is disproportionate to the crime, the present offense as well as appellant's criminal history is considered). Issue Three is overruled.

*Evidentiary Sufficiency*

In Issue Four, Appellant argues that the evidence adduced at trial was legally and factually insufficient to support his conviction. Specifically, Appellant argues that the State failed to produce sufficient evidence showing that Appellant entered the home of A.C.'s father, without consent, and that Appellant had the requisite intent to commit a felony. We reject Appellant's factual insufficiency argument because Texas no longer recognizes factual-insufficiency claims. *Brooks v.* State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

In a legal sufficiency review, we consider all the evidence in the light most favorable to the verdict, and determine whether a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is the responsibility of the jury to resolve conflicts in the testimony, to weigh the evidence, and to make reasonable inferences from the

9

evidence. *Hooper*, 214 S.W.3d at 13; *Brooks*, 323 S.W.3d at 899. The jury can accept or reject all or part of the evidence presented. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). On appeal, we do not reweigh the evidence and we do not substitute our own judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Any evidentiary inconsistencies are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony. TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). A person commits the offense of aggravated sexual assault of a child if he sexually assaults a child younger than 14 years of age. *Id.* § 22.021(a)(1), (2)(B). A person commits the offense of indecency with a child by contact if he engages in sexual contact with the child or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1).

Where the charge is burglary with intent to commit a felony, the offense is complete whether the intended felony is committed, as long as the nonconsensual entry is made with the intent to commit the felony alleged. *Jimenez v. State*, 804 S.W.2d 334, 341 (Tex. App. – San Antonio 1991, pet. ref'd). Intent, identity, and entry may be proven by circumstantial evidence. *See Moore v. State,* 54 S.W.3d 529, 539 (Tex. App. – Fort Worth 2001, pet. ref'd) (intent); *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (identity); *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex. Crim. App. 1978) (entry); *Richardson v. State*, No. 05-02-00786-CR, 2003 WL 21525315, at *2 (Tex. App. – Dallas July 8, 2003, pet. ref'd) (not designated for publication) (jury's verdict supported by legally sufficient evidence where victim made an in-court identification of assailant).

10

Appellant argues that the evidence is insufficient because there was no evidence of entry as none of his fingerprints were found in the home. However, entry and identity can be proven by circumstantial evidence. *See id*. Here, A.C. made an in-court identification of Appellant as the man who licked her buttocks. Ceniceros, the DPS Crime Lab forensic scientist, testified that the DNA extracted from the buttocks swabbing was consistent with Appellant's DNA. Appellant also contends that he could not be convicted of aggravated assault or indecency with a child because there was no evidence showing that he touched the child's anus, breast, or any part of her genitals and no evidence showing that he touched any part of the child with his anus, breast, or genitals. However, the State is not required to prove the actual commission of the felony to prove burglary of a habitation, as long as the nonconsensual entry is made with the intent to commit the felony alleged. *See Jimenez*, 804 S.W.2d at 341.

In this case, the jury could have reasonably concluded that Appellant's intent, in entering the home of A.C.'s father without consent, entering A.C.'s bedroom, and licking her buttocks was to commit aggravated sexual assault of a child or indecency with a child. *See Sendejo v. State*, 26 S.W.3d 676, 678 (Tex. App. – Corpus Christi 2000, pet. ref'd) (evidence was legally sufficient to support burglary of habitation conviction with intent to commit indecency with a child where defendant touched child's leg near her genital area). Reviewing the evidence in the light most favorable to the verdict, we find that the evidence was legally sufficient to support the jury's verdict that Appellant intentionally entered the home of A.C.'s father, without consent and intended to commit a felony. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011); *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895. Issue Four is overruled.

*Motion for Mistrial*

11

In Issue Five, Appellant contends that the trial court erred in denying his request for mistrial after the jury heard Agustin Vital, the State's witness and Appellant's neighbor, testify that he knew for a fact that Appellant is a registered sex offender. Without elaboration, Appellant maintains that the witness's statement was so inflammatory that its prejudicial effect could not be cured by the trial court's instruction to disregard.

A mistrial is the trial court's remedy for improper conduct that is so harmful that the case must be redone. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is required when the improper reference is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Grotti v. State*, 209 S.W.3d 747, 776 (Tex. App. – Fort Worth 2006, pet. granted), *aff'd by*, 273 S.W.3d 273 (Tex. Crim. App. 2008); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). On appeal, a trial court's denial of a motion for mistrial will be upheld on appeal absent an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Hawkins*, 135 S.W.3d at 77; *Ladd*, 3 S.W.3d at 567.

We discern no abuse of discretion on the part of the trial court in its denial of Appellant's request for mistrial. While the statement is prejudicial, it is not of such character to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. Here, the jury was promptly told to disregard the statement that Vital knew Appellant was a registered sex offender. Normally, a prompt instruction to disregard will cure the prejudicial effect associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). In the absence of evidence that it did not, we presume the jury followed the trial court's instruction to disregard. *Orr v. State*, 306 S.W.3d 380, 405 (Tex. App. – Fort Worth 2010, no

12

pet.).

The trial court could have reasonably concluded that a mistrial was not justified because Vital's statement was not so inflammatory that its prejudicial effect could not be cured by an instruction to disregard. *See Brownlee v. State*, No. 11-08-00264-CR, 2010 WL 1952426, at *2 (Tex. App. – Eastland May 13, 2010, pet. ref'd) (finding no abuse of discretion in the trial court's denial of a mistrial where police officer stated that he knew defendant's address because that was the address defendant used when he registered as a sex offender); *Spencer v. State*, No. 08-10-00262-CR, 2011 WL 6093381, at *2-3 (Tex. App. – El Paso Dec. 7, 2011, pet. ref'd) (denial of motion for mistrial upheld where police stated that he asked defendant whether he was a sex offender). Because Appellant fails to explain how Vital's statement influenced the jury such that an instruction to disregard could not have cured any prejudicial effect and because we presume the jury followed the trial court's instruction in the absence of evidence to the contrary, we cannot conclude the trial court abused its discretion in denying Appellant's request for mistrial. *See Ovalle*, 13 S.W.3d at 783; *Orr*, 306 S.W.3d at 405. Issue Five is overruled.

*Admission of Evidence*

We address together Issues Six, Seven, and Nine, challenging the trial court's admission of evidence that, prior to trial, had been the subject of Appellant's motions to suppress. In Issue Six, Appellant argues that the trial court erred in admitting A.C.'s DNA evidence because the State failed to establish a proper chain of custody. In Issue Seven, Appellant contends that his DNA tests should have been excluded as evidence because the collection of his DNA sample violated his Fourth, Fifth, and Sixth Amendment rights and Texas Rule of Evidence 403. Similarly, in Issue Nine, Appellant argues that the trial court erred in not excluding the photo array in which A.C.

13

identified him as the man who licked her buttocks.

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993). We will uphold the trial court's decision if it falls within the zone of reasonable disagreement. *Oprean*, 201 S.W.3d at 726; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

In response to Issues Six, Seven, and Nine, the State asserts that Appellant has failed to preserve these three issues for review due to defense counsel's affirmative statement at trial that he had "no objection" to the admission of the same evidence about which he now complains on appeal.

The record shows that Appellant moved to suppress DNA evidence collected from both A.C. and Appellant, and the photo array identification provided by A.C. After conducting hearings, the trial court denied Appellant's motions to suppress. At trial, when the State moved to admit A.C.'s buccal swabs, Appellant's DNA evidence, and the photo array, the trial court asked if there were any objections, and defense counsel affirmatively answered, "No objection."

Ordinarily, the defendant is not required to object to the admission of evidence at trial to preserve error when a pretrial motion to suppress is denied. *Garza v. State*, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004). Nevertheless, when the defendant affirmatively states that he has "no objection" to the same evidence when it is later introduced at trial, he waives any error related to its admission into evidence. *Dean v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988); *Bennett v. State*, 831 S.W.2d 20, 21 (Tex. App. – El Paso 1992, no pet.). Because defense counsel affirmatively stated that he had no objection when A.C.'s buccal swabs, Appellant's DNA

14

evidence, and the photo array were offered into evidence at trial, Appellant waived any alleged error for our review and has waived his right to complain on appeal that the evidence was illegally obtained. *See Dean*, 749 S.W.2d at 83; *Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008).

<em>Improper Chain of Custody Argument</em>

Because Appellant objected to the admission of the buttocks swabs taken from A.C. on the ground of improper predicate, he has properly preserved this issue for our review. As part of his sixth issue on appeal, Appellant contends that the trial court erred in admitting the buttocks swabs because the State failed to validate the beginning and end of the chain of custody of the swabs.

A chain of custody is sufficiently authenticated when the State establishes the beginning and the end of the chain, particularly when the chain ends at a laboratory. *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd). Absent proof of tampering, most problems with the chain of custody do not affect the admissibility of evidence, but rather go to the weight of the evidence. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). The State need only prove the beginning and end of the chain of custody; it is not required to show a moment-by-moment account of the location of evidence from the time of seizure. *Shaw v. State*, 329 S.W.3d 645, 654 (Tex. App. – Houston [14th Dist.] 2010, pet. ref'd).

The record reflects that Officer Martinez collected two buttocks swabs from A.C., placed the swabs in envelopes, sealed the envelopes, and immediately handed the envelopes to Officer Montelongo. Montelongo testified that when the envelopes were handed to him he sealed and labeled them with the case number and his initials, and then placed them in the evidence locker. Montelongo testified that a crime scene technician would come by every morning to pick up any

15

evidence in the locker and take it to the property office. At a later point in time, Montelongo signed out from the property office the evidence which remained sealed and appeared not to have been tampered with and personally delivered the evidence to the DPS Crime Lab for analysis.

Christine Ceniceros, a forensic scientist at the DPS Crime Lab, testified that the evidence was secured in the evidence vault by Patricia Garcia, an evidence technician. No one other than Ceniceros and Garcia handled the evidence at issue. When Ceniceros received the evidence for DNA testing it was labeled and identified, not tampered with, and was sealed.

Because the record sufficiently establishes the beginning and end of the chain, and there is no evidence of tampering with the evidence, we find that the trial court did not err in admitting the buttocks swabs. *See Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989); *see also Torres v. State*, No. 08-09-00266-CR, 2011 WL 3199065, at *3 (Tex. App. – El Paso Jul. 27, 2011, no pet.). Accordingly, Issues Six, Seven, and Nine are overruled.

*Right to Cross-Examine Regarding Prior Sexual Abuse Allegations*

In Issue Eight, Appellant argues that because he was unable to cross-examine Detective Bowling, A.C.'s grandmother, or A.C.'s father about allegations of sexual abuse A.C. made against her grandmother and father, his Sixth Amendment right to cross-examine and Texas Rule of Evidence 404(b) were violated. He maintains that the false allegations made by A.C. are admissible under the rules of evidence to attack A.C.'s credibility and to show the *modus operandi* of the child.

Similar to our review of a trial court's decision to admit or exclude evidence, we use an abuse of discretion standard in reviewing a trial court's decision to limit cross-examination. *Sansom v. State*, 292 S.W.3d 112, 118 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd) (citing

16

*Matchett v. State*, 941 S.W.2d 922, 940 (Tex. Crim. App. 1996)) and will uphold the ruling so long as it lies within the zone of reasonable disagreement. *Montgomery*, 810 S W.2d at 391.

The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. U.S. CONST. AMEND. VI; *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). "[T]he right of cross-examination by the accused of a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). The trial court has broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *see also Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

Generally, the Texas Rules of Evidence prohibit evidence of crimes, wrongs, or acts to prove the character of a person to show action in conformity therein. TEX. R. EVID. 404(b). But such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* For evidence of other crimes or acts to be admissible, it must be relevant for a purpose other than to show the character of a person and that he acted in conformity with it. *See id.* Prior allegations of sexual abuse may be used to impeach a witness's credibility if there is a showing that the evidence is probative. *Lopez*, 18 S.W.3d at 226. The evidence will be considered probative if the prior allegations were similar to the allegation at bar, and if there is evidence showing that the prior allegations were false. *See id.* at

17

222-23. Without a showing of the probative nature of the evidence, the Confrontation Clause does not require admissibility due to low probative value of the evidence and the high risk of jury confusion. *Id*. at 226.

Appellant argues that his cross-examination of Detective Bowling, A.C., A.C.'s grandmother and father about the prior allegations was admissible to show A.C.'s *modus operandi* and to attack A.C.'s credibility. At trial, Appellant elicited testimony from Detective Bowling that, prior to this case, she was already familiar with A.C. and her family due to a prior sexual abuse charge. The trial court did not allow Appellant to go into whether the allegations in the prior case were false. Appellant made a bill of exception with respect to the testimony of A.C. and her grandmother. A.C's grandmother testified that to her knowledge A.C. never made any allegations against her, she did not know who made the allegation, that she was investigated by CPS but the allegation was found to be false. She also stated that it was A.C.'s mother who told A.C. to make the accusations.

A.C. testified that she did not make any allegations against her grandmother or her father and that she did not remember telling CPS these allegations. Outside of the presence of the jury, A.C.'s father also testified that his daughter never accused him of any sexual abuse. Afterwards, the trial court overruled Appellant's objection that the evidence was admissible under the Sixth Amendment and Texas Rule of Evidence 404(b).

Appellant has failed to show that A.C. made any prior false allegations of sexual abuse against her grandmother or father and failed to show that any allegations were similar to the accusation in this case. Moreover, Appellant fails to elaborate on how the admission of such evidence would establish a *modus operandi* that resulted in a false allegation against him where the

18

accusations were made against family members and not strangers. Because the trial court was free to limit cross-examination to prevent jury confusion and unfair prejudice, the trial court did not err in excluding any references to the alleged prior false allegations made by A.C. *See Lopez*, 18 S.W.3d at 222-23; *see also Hammer*, 296 S.W.3d at 561. Issue Eight is overruled.

*Motion to Recuse*

Finally, in Issue Ten, Appellant argues that the trial court judge should have recused himself from this matter because Appellant was concerned about the trial court's impartiality. The State responds that Appellant failed to preserve this issue for review. We agree.

In order to preserve a claim of recusal for appellate review, Appellant was required to file a verified motion to recuse at least ten days prior to the date set for trial or other hearing. *See* TEX. R. CIV. P. 18a(a); *Wirtz v. Massachusetts Mut. Life Ins. Co.,* 898 S.W.2d 414, 422-23 (Tex. App. – Amarillo 1995, no writ). This requirement is mandatory, and failure to comply waives any right to complain thereafter. *See Vickery v. Texas Carpet Co., Inc.,* 792 S.W.2d 759, 763 (Tex. App. – Houston [14th Dist.] 1990, writ denied). Because no motion to recuse was ever filed in this case, we conclude that this issue was not preserved for our review. Issue Ten is overruled.

*Reformation of the Written Judgment*

In a footnote, the State asks us to reform the judgment to reflect Appellant's plea of true to its first enhancement paragraph that alleged two prior, sequential, and final felony convictions as well as the jury's finding of true on the first enhancement paragraph. This Court has the power to modify incorrect judgments when we have the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-8 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App. – Dallas 1991, pet. ref'd). The written judgment reflects that

19

Appellant's plea and the jury's findings as to the first enhancement paragraph are marked "N/A." However, this is contrary to the record because Appellant pleaded true to the first enhancement paragraph and the jury also found the first enhancement paragraph to be true. Accordingly, we reform the written judgment to reflect Appellant's plea of true to the first enhancement paragraph and that the jury found the same to be true.

## CONCLUSION

We overrule Appellant's issues and affirm the judgment of the trial court as reformed.


GUADALUPE RIVERA, Justice

May 23, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)